FIRST COMMERCE BANK, Plaintiff v. MICHAEL W. DOCKERY,
ANNETTA B. DOCKERY, Defendants

No. COA04-1102

(Filed 5 July 2005)

**Negotiable Instruments— promissory note—signed writing required for release—summary judgment**

The trial court did not err by granting summary judgment in favor of plaintiff bank based on defendant's default of a $38,000 promissory note even though defendant contends there was a genuine issue of material fact regarding whether plaintiff agreed to release defendant from any liability on the $38,000 debt as part of the reaffirmation agreement between her husband and plaintiff, because: (1) although defendant contends plaintiff verbally agreed to release her from the debt obligation, the release was not in a signed writing as required by N.C.G.S. § 25-3-604; and (2) defendant admitted in her answer that she was in default of her obligations under the promissory note she signed by failing to make payments when due.

Judge LEVINSON concurring.

Appeal by defendant Annetta B. Dockery from judgment entered 12 May 2004 by Judge Nathaniel J. Poovey in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 March 2005.

*Cranford, Schultze and Tomchin, P.A., by Michael F. Schultze, for plaintiff-appellee.*

*James, McElroy & Diehl, P.A., by Richard B. Fennell, for defendant-appellant Annetta B. Dockery.*

HUNTER, Judge.

Defendant, Annetta B. Dockery, appeals the trial court's order granting summary judgment in favor of plaintiff, First Commerce Bank. After careful review, we affirm the summary judgment order.

The undisputed facts tend to indicate that on or about 21 November 2002, First Commerce Bank agreed to loan, and defendants, Michael and Annetta Dockery, agreed to borrow, the original principal sum of $38,000.00 pursuant to a Promissory Note. The loan was secured by a 1997 Ford Expedition automobile and a 2000 Sea Doo Boat, which were titled only in Michael Dockery's name. Michael and Annetta Dockery failed to make payments when due and were default on their obligations under the promissory note. First Commerce Bank accelerated the principal balance by filing a complaint against Michael and Annetta Dockery on 22 May 2003. Annetta Dockery filed her answer on 23 July 2003.

After the complaint was filed, Michael Dockery sought bankruptcy protection on 11 July 2003, which resulted in an automatic stay of the action. brought by First Commerce Bank against Michael Dockery. In response, First Commerce Bank sought relief from the automatic stay in order to repossess the collateral. Then, on 4 August 2003, Michael Dockery's attorney sent a letter to First Commerce Bank regarding the possibility of reaffirming the debt owed to First Commerce Bank, which would allow Michael Dockery to. retain the ownership of the collateral—the Ford Expedition and the Sea Doo Boat. In an exchange of letters, Michael Dockery and First Commerce Bank agreed to reaffirm the debt for $20,000.00 payable over a sixty month time period with an interest rate of eight percent (8%). Michael Dockery and First Commerce Bank then executed a reaffirmation agreement, which contained their agreement that Michael Dockery would reaffirm $20,000.00 of his indebtedness owed to First Commerce Bank, payable in sixty monthly installments with eight percent (8%) interest per year. The agreement also referenced 11 U.S.C. § 524, which governs reaffirmation agreements.

On 30 March 2004, First Commerce Bank moved for summary judgment against Annetta Dockery. In response, Annetta Dockery filed an affidavit from Michael Dockery, which stated that First Commerce Bank agreed to release Annetta Dockery if Michael Dockery reaffirmed the debt. Boyd Coggins, Vice President of Bank of Granite, the successor to First Commerce Bank, filed an affidavit in response to the Micheal Dockery affidavit. Mr. Coggins stated that

Michael Dockery and the Bank agreed that in exchange for Michael Dockery reaffirming his obligations under the Note for $20,000.00, the bank would not seek relief from the automatic stay to repossess the collateral. According to Mr. Coggins, there was no agreement reached concerning the balance of the debt as it relates to any other obligor or guarantor. The trial court determined there were no genuine issues of material fact and entered summary judgment in favor of First Commerce Bank. Annetta Dockery appeals.

Annetta Dockery contends the trial court erroneously granted summary judgment to First Commerce Bank because a genuine issue of material fact exists regarding whether First Commerce Bank agreed to release Annetta Dockery from any liability on the $38,000.00 debt as part of the reaffirmation agreement between Michael Dockery and First Commerce Bank. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003).

> When the party bringing the cause of action moves for summary judgment, he must establish that all of the facts on all of the essential elements of his claim are in his favor and that there is no genuine issue of material fact with respect to any one of the essential elements of his claim. In other words, the party must establish his claim beyond any genuine dispute with respect to any of the material facts. An issue is genuine if it may be maintained by substantial evidence. An issue is material if the facts as alleged would constitute a legal defense, would affect the result of the action or would prevent the party against whom it is resolved from prevailing in the action. If the movant carries his burden of establishing *prima facie* that he is entitled to summary judgment then his motion should be granted unless the opposing party responds and shows either that a genuine issue of material fact exists or that he has an excuse for not so showing. If the movant fails to carry his burden, the opposing party does not have to respond and summary judgment is not proper regardless of whether he responds or not.

*Development Corp. v. James*, 300 N.C. 631, 637, 268 S.E.2d 205, 209-10 (1980) (citations omitted). "In ruling on the motion, the court must consider the evidence in the light most favorable to the non-movant, who is entitled to the benefit of all favorable inferences

which may reasonably be drawn from the facts proffered." *Averitt v. Rozier*, 119 N.C. App. 216, 218, 458 S.E.2d 26, 28 (1995).

"A reaffirmation agreement is a contract between a debtor and a creditor. In substance a reaffirmation agreement is a new contract that renegotiates or reaffirms the original debt. Conventional contract principles apply to reaffirmation agreements." *Schott v. Wyhy Fed. Credit Union*, 282 B.R. 1, 7 (B.A.P. 10th Cir. 2002) (citations omitted). Thus, state law governs the construction and interpretation of a reaffirmation agreement. *Id.*

The promissory note entered into by Annetta Dockery is a negotiable instrument governed by Article 3 of the Uniform Commercial Code ("UCC"), N.C. Gen. Stat. § 25-3-101 *et seq.* According to N.C. Gen. Stat. § 25-3-104 (2003), the following elements are required for an instrument to be classified as a negotiable instrument:

(a) Except as provided in subsections (c) and (d) of this section, "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) Is payable on demand or at a definite time; and

(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

. . .

(d) A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this Article.

*Id.* The promissory note in this case complies with all of the provisions in N.C. Gen. Stat. § 25-3-104(a)(1)-(3) and it does not contain a

conspicuous statement indicating it is not negotiable. Therefore, the promissory note is a negotiable instrument governed by the UCC.

Under the UCC: "A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument . . . (ii) by agreeing not to sue or otherwise renouncing rights against the party by a *signed writing*." N.C. Gen. Stat. § 25-3-604(a) (2003) (emphasis added). Although Annetta Dockery contends First Commerce Bank verbally agreed to release her from the debt obligation, the release was not in a signed writing as required by N.C. Gen. Stat. § 25-3-604. *See id.* As Annetta Dockery admitted in her answer that she was in default of her obligations under the promissory note she signed because she failed to make payments when due, summary judgment was properly granted by the trial court.

Affirmed.

Judge McCULLOUGH concurs.

Judge LEVINSON concurs in a separate opinion.

LEVINSON, Judge concurring.

I write separately to clarify why, in my view, the superior court order should be affirmed.

In her three-page argument, appellant contends that there are genuine issues of material fact as to "whether the [reaffirmation agreement] evidenced the full agreement between the parties" and "whether the parties agreed to release [appellant] in return for Michael Dockery's agreement to reaffirm his liability on the debt." Appellant essentially contends that as part of the consideration supporting the reaffirmation agreement, First Commerce Bank (*here-inafter* "bank") agreed to release her from the $38,000 promissory note. I conclude that admission of evidence concerning appellant's release from debt would impermissibly add to the clear and unambiguous terms of the written reaffirmation agreement, which represents a fully integrated contract.

Preliminarily, I observe that because it appears the reaffirmation agreement itself does not meet the requirements set forth in N.C.G.S. § 25-3-104 (2003) for negotiable instruments, and because neither party contends on appeal that the provisions of Article 3 of the UCC

apply to this agreement, I resolve this matter by application of common law principles. With respect to the original $38,000 promissory note that is the subject of the current action against appellant, I agree with the majority that Article 3 of the UCC generally governs.

Appellant's argument that the bank agreed not to seek recourse against her if Michael Dockery agreed to the reaffirmation depends entirely on the introduction of parol evidence. This is because there is nothing within the agreement whatsoever that purports to release her from the $38,000 obligation to the bank. Michael Dockery's affidavit, which states that the bank "agreed to release [appellant] if I reaffirmed the debt[,]" was offered by appellant in opposition to the bank's motion for summary judgment on the debt. In response, the bank tendered an affidavit from its executive which stated that the bank agreed not to "seek relief from [the bankruptcy] stay to repossess [the collateral, a Ford vehicle and recreational boat,]" and that "[a]t no time was any agreement reached concerning the balance of the debt as it relates to any other obligor or guarantor." Indeed, as the record reveals, the reaffirmation agreement was entered as a consequence of a bankruptcy case involving only Michael Dockery (No. 03-32605 W.D.N.C.).

The affidavit appellant seeks to admit would violate the parol evidence rule, which "prohibits the consideration of evidence as to anything which happened prior to or simultaneously with the making of a contract which would vary the terms of the agreement." *Harrell v. First Union Nat. Bank*, 76 N.C. App. 666, 667, 334 S.E.2d 109, 110 (1985), *affirmed*, 316 N.C. 191, 340 S.E.2d 111 (1986). The parol evidence rule prohibits the admission of evidence " 'to vary, add to, or contradict [the terms of] a written instrument intended to be the final integration of the transaction.' " *Godfrey v. Res-Care, Inc.*, 165 N.C. App. 68, 76, 598 S.E.2d 396, 402 (quoting *Hall v. Hotel L'Europe, Inc.*, 69 N.C. App. 664, 666, 318 S.E.2d 99, 101 (1984)), *disc. review denied*, 359 N.C. 67, 604 S.E.2d 310 (2004). Our Supreme Court has also described the parol evidence rule as follows:

> It appears to be well settled in this jurisdiction that parol testimony of prior or contemporaneous negotiations or conversations inconsistent with a written contract entered into between the parties, or which tends to substitute a new or different contract for the one evidenced by the writing, is incompetent. 2 Stansbury's N.C. Evidence 253 (Brandis Rev. 1973). This rule applies where the writing totally integrates all the terms of a contract or supersedes all other agreements relating to the transac-

tion. The rule is otherwise where it is shown that the writing is not a full integration of the terms of the contract. The terms not included in the writing may then be shown by parol. *Id.*, § 252.

*Craig v. Kessing*, 297 N.C. 32, 34-35, 253 S.E.2d 264, 265-66 (1979).

Appellant contends that, because the reaffirmation agreement does not contain a merger clause, it cannot constitute a complete integration. Appellant misstates the law in this regard.

The inclusion of a merger clause does not conclusively determine whether a contract is fully integrated. *See* Restatement (Second) of Contracts, § 216 (1981) ("a [merger and integration] does not control the question whether the writing was assented to as an integrated agreement. . . ."); *see also Zinn v. Walker*, 87 N.C. App. 325, 333, 361 S.E.2d 314, 318 (1987). The words of a merger clause do not categorically determine whether a contract is fully integrated, but only "create a rebuttable presumption that the writing represents the final agreement between the parties." *Zinn*, 87 N.C. App. at 333, 361 S.E.2d at 318. A merger clause "is evidence of the intention of the parties to the [contract] that it constitute their entire agreement[.]" *Drug Stores v. Mayfair*, 50 N.C. App. 442, 449, 274 S.E.2d 365, 369 (1981).

Further, a contract may be fully integrated even though the drafters omit the merger clause:

[W]here the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is **presumed** the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing. Accordingly, all prior and contemporaneous negotiations in respect to those elements are deemed **merged** in the written agreement.

*Neal v. Marrone*, 239 N.C. 73, 77, 79 S.E.2d 239, 242 (1953) (emphasis added); *see also Weiss v. Woody*, 80 N.C. App. 86, 91, 341 S.E.2d 103, 106 (1986).

Appellant does not cite any authority to support its contention that, in the absence of a merger clause, an agreement **cannot** constitute a complete integration, and we find none. Nor does appellant cite any North Carolina or other authority illustrating or suggesting that the Dockery affidavit is admissible. Our common law, in fact, suggests the contrary result. *See id.*; *see also Craig*, 297 N.C. at 34-35, 253 S.E.2d at 265-66. In sum, appellant's conclusory argument that the

reaffirmation agreement was not intended as a complete integration is unconvincing. In my view, the record unequivocally demonstrates that the reaffirmation agreement was intended as a fully integrated memorialization of a negotiated settlement between Michael Dockery and the bank, and that allowing parol evidence of a purported agreement by the bank to forego its remedies on the $38,000 note against appellant would impermissibly add to the agreement, or "tend[] to substitute a new or different contract for the one evidenced by the writing" in violation of *Craig*.

Since the record suggests only that the agreement was intended to be fully integrated, the admission of parol evidence for reasons other than certain exceptions would be error:

> [P]arol evidence of a failure of consideration may be admissible to elucidate the terms of a contract. However, in . . . cases wherein parol evidence was admitted to show lack of consideration, the evidence pertained to a condition precedent that was not stated on the face of the contract, but which was a condition on which the validity of the contract depended. Therefore, the parol evidence did not contradict the contract, but merely set out the full understanding between the parties. In [these cases], the parol evidence was necessary to explain the terms of the contract. However, parol evidence is not admissible to contradict the language of the contract.

*Thompson v. First Citizens Bank & Tr. Co.*, 151 N.C. App. 704, 709, 567 S.E.2d 184, 189 (2002) (citations omitted).

Appellant contends neither that parol evidence is necessary to establish, *e.g.*, fraud, mistake or undue influence, nor that parol evidence is necessary to help clarify or understand the express terms of the reaffirmation agreement. And appellant does not suggest that there was a condition precedent to the obligations contained in the reaffirmation agreement, or that Michael Dockery's affidavit is admissible to demonstrate a failure of consideration and an elucidation of the contractual terms. Instead, appellant acknowledges that the bank's agreement to forego its remedies against appellant would constitute an "additional term" which will "supplement" the agreement. Again, as discussed above, the parol evidence rule bars such evidence on the facts of this case.

Even assuming, *arguendo*, the bank agreed not to collect on appellant's obligation as part of its reaffirmation with Michael

Dockery, appellant does not articulate—and this Court therefore need not address—whether or how she could utilize the same as an intended third party beneficiary and/or as a legal defense in the bank's direct action against her on the $38,000 note.

I conclude that any evidence that the bank agreed not to pursue its remedies against appellant on the $38,000 note would impermissibly allow an addition to the clear and unambiguous terms of the written reaffirmation agreement, which represents a fully integrated contract. Consequently, Michael Dockery's affidavit does not help appellant defeat the bank's motion for summary judgment, and appellant's generalized contention that the affidavit raises a genuine issue of material fact fails. Finally, appellant has not articulated how this would, in any event, provide a bar to the present action.

Like the majority, I conclude summary judgment was properly granted in favor of plaintiff.